UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BRANCH BANKING AND TRUST
COMPANY,

      Plaintiff,

v.                                 Case No:   6:15-cv-2005-Orl-31TBS

CHALIFOUX BUSINESS PARK, L.L.C.,
THOMAS E. CHALIFOUX, JR. , HARRY
W. CHALIFOUX and CAROLYN A.
CHALIFOUX,

      Defendants.

_____

## REPORT AND RECOMMENDATION

      Pending before the Court is Plaintiff Branch Banking and Trust Company's Motion for Default Final Judgment with Supporting Memorandum of Law (Doc. 24).   Upon due consideration, I respectfully recommend that the motion be **GRANTED**.

## I. Background

      Plaintiff and Defendants Chalifoux Business Park, L.L.C. ("CBP"), Thomas E. Chalifoux, Jr., Harry W. Chalifoux and Carolyn Chalifoux entered into a Global Settlement Agreement on January 26, 2015, to resolve Defendants' obligations on several commercial loans made to entities owned and/or controlled by the individual Defendants (Doc. 1, ¶ 12).   As part of the settlement, CBP executed and delivered to Plaintiff a promissory note ("Note") in the principal amount of $5,406,048.46 (Id., ¶ 13).   The Note provides that unpaid amounts "bear interest at a rate of interest equal to the highest possible rate allowed under Florida law;" Plaintiff may charge a late fee equal to five percent of delinquent payments; and CBP is to "pay all costs, expenses and reasonable

attorneys' fees, incurred by the Payee in connection with any … default."   (Doc. 24-1 at 2).

Defendant Thomas E. Chalifoux, Jr., personally guaranteed payment of the Note (Id., ¶ 20; Doc. 1-1 at 4).   Defendant Harry W. Chalifoux personally guaranteed payment of the Note up to a maximum of $6,367,699.07 (Id., ¶ 24; Doc. 1-1 at 12).   Defendant Carolyn A. Chalifoux personally guaranteed payment of the Note up to a maximum of $3,448,184.33 (Id., ¶ 28; Doc. 1-1 at 20).

Plaintiff owns and holds the Note (Doc. 1, ¶ 14).   CBP defaulted on the Note by failing to make the installment payment due in February 2015 and all subsequent payments (Id., ¶¶ 15-16).   In response to the default, Plaintiff accelerated the Note and declared it immediately due and payable in full (Id., ¶ 16).   Plaintiff demanded payment, but CBP has failed to make any payment (Id., ¶¶ 15-18).

On November 30, 2015, the amount due and owing to Plaintiff from CBP, Thomas E. Chalifoux, Jr., and Harry W. Chalifoux, jointly and severally, was $5,406,048.46 in principal, together with $231,258.74 in accrued but unpaid interest, with interest thereafter at the rate of $750.84 per day (Id., ¶ 17; Doc. 24-1, ¶ 12).   Plaintiff seeks judgment against Defendants, not to exceed the limits of their liability, for these damages, together with court costs, and attorney's fees.[1]

An amended affidavit of service has been filed, in which the process server swears that he served CBP on December 8, 2015 by serving Dagnes Amill as officer manager for the registered agent, Thomas E. Chalifoux, Jr. (Doc. 28).   Another affidavit of service shows that Thomas E. Chalifoux, Jr. was personally served on January 14, 2016 (Doc.

---

[1] Although the Note provides for late fees, they are not included in the Affidavit of David S. Pratt in Support of Branch Banking and Trust Company's Motion for Default Final Judgment (Doc. 24-1 at 2).

17).   In his affidavit, the process server stated "Military Status: Based upon knowledge from the inquiry of the party served, defendant is not in the military service of the United States."   (Id.).   The amended affidavit of service for Harry W. Chalifoux shows that he was served at his home on December 15, 2015, by serving co-resident Debbie Chalifoux, aged 15 or older (Doc 26).   Again, the process server swears that: "Military Status: Based upon knowledge from the inquiry of the party served, defendant is not in the military service of the United States."   (Id.).   The amended affidavit of service on Carolyn A. Chalifoux states that she was personally served on February 2, 2016 and that "Military Status: Based upon knowledge from the inquiry of the party served, defendant is not in the military service of the United States."   (Doc. 27).   Defendants have not answered the complaint or otherwise appeared in this action.   The Clerk entered CBP's default on January 4, 2016; Harry W. Chalifoux's default on January 11, 2016; Thomas E. Chalifoux, Jr.'s default on February 5, 2016; and Carolyn A. Chalifoux's default on February 25, 2016 (Docs. 13, 16, 19, 23).

## II. Discussion

Rule 55(b) of the Federal Rules of Civil Procedure authorizes a court to enter default judgment against a party whose default has been entered by the clerk.   Once default has been entered, a defaulting defendant is considered to have admitted all the well-pleaded allegations of fact in the plaintiff's complaint.   See Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir. 1987).   But, "a defendant's default does not in itself warrant the court in entering a default judgment," and it "is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover."   Nishimatsu Const.

Co., Ltd., v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).[2]  Along with the requirement that the clerk's entry of default be proper, the court may enter a default judgment only if there is "a sufficient basis in the pleadings for the judgment entered."  Id. The party seeking default judgment must also comply with the requirements of the Servicemembers Civil Relief Act.  50 U.S.C. § 3931.

As an initial matter, I find that jurisdiction is proper pursuant to 28 U.S.C. § 1332. When suit was filed, Plaintiff was a North Carolina banking corporation with it principal place of business in, and a citizen of, North Carolina (Doc. 1, ¶ 1).  All Defendants were citizens of Florida (Id., ¶¶ 3-6), and the amount in controversy exceeded $75,000.

Federal Rule of Civil Procedure 4(h) provides for service on a corporation, in a judicial district, by *inter alia*, "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or service is made."  FED. R. CIV. P. 4(e)(1) and (h)(1)(a).  Section 48.062(1) Florida Statutes provides for service on a limited liability company by service on the registered agent or, "on any employee of the registered agent during the first attempt at service even if the registered agent is a natural person and is temporarily absent from his or her office." FLA. STAT. § 48.062(1).  Based on this statute, I find that Plaintiff obtained good service of process on CBP.

Under Florida law, an individual can be served personally, or "by leaving the copies at his or her usual place of abode with any person residing therein who is 15 years of age or older and informing the person of the contents."  FLA. STAT. § 48.031(1). Applying this statute, I find that the individual Defendants were all properly served.

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

The process server's affidavit testimony that he inquired, and the individual Defendants are not in the military service is, in my view, sufficient to meet the requirements of the Servicemembers Civil Relief Act, 50 U.S.C. § 3931.   Accordingly, I find that the entry of default by the Clerk against all Defendants was proper.   "When service of process is properly effected, but the served party fails to respond in a timely manner, the clerk must enter a default against that party once the district court is informed of that failure."   Kelly v. Florida, 233 F. App'x 883, 885 (11th Cir. 2007) (citing Fᴇᴅ. R. Cɪᴠ. P. 55(a)).

The well pleaded averments in Plaintiff's complaint establish that it owns and holds the Note; CBP defaulted on the Note; the remaining Defendants defaulted on their guarantees; and that the Note has been accelerated.   The Note provides for the recovery of Plaintiff's "costs, expenses and reasonable attorneys' fees, incurred by the Payee in connection with any … default."   (Doc. 24-1 at 2).   Accordingly, I find that judgment is properly entered for Plaintiff and against CBP and Thomas E. Chalifoux, Jr., in the amount of $5,406,048.46 in principal, $307,093.58 as interest through March 10, 2016, with interest thereafter at the rate of $750.84 per day.[3]   Thus, the amount due on March 10, 2016 is $ 5,713,142.04.[4]   Harry W. Chalifoux's liability is capped at $6,367,699.07; and Carolyn A. Chalifoux is liable for $3,448,184.33 of the amount due.   These obligations are joint and several (Doc. 24-1 at 12-37).

---

[3] Plaintiff calculated $231,258.74 in per diem interest through November 30, 2015.   Interest thereafter was calculated as follows: $750.84 X 101 (the number of days from December 1, 2015 through March 10, 2016) = $75,834.84.

[4] Although the Note provides for late fees, they are not included in the Affidavit of David S. Pratt in Support of Branch Banking and Trust Company's Motion for Default Final Judgment (Doc. 24-1 at 2).

Plaintiff has not filed a bill of costs, but does seek the $400.00 filing fee; $589.80 for service of process; and $7.40 in copying charges (Doc. 24-2 at 3).   These costs are recoverable under the Note which provides:

> 5.  <u>COSTS OF COLLECTION</u>.   The Maker and each endorser, surety, and guarantor (if any), agrees that they shall, jointly and severally, pay all costs, expenses and reasonable attorneys' fees, incurred by the Payee in connection with any aspect of this Note, including any default as well as any proceedings which may involve this Note  or any other loan document relating hereto including, but not limited to, arbitration, litigation, bankruptcy proceedings, etc....

(Doc. 24-1 at 9).

Plaintiff also seeks an award of $7,179.70 in attorney's fees.   Courts in this circuit use the lodestar approach to determine reasonable attorney's fees.   <u>Chemische Fabrik Budenheim KG v. Bavaria Corp. Int'l</u>, No. 6:08-cv-1182-Orl-22DAB, 2010 WL 98991 (M.D. Fla. Jan. 6, 2010); <u>Norman v. Hous. Auth. of City of Montgomery</u>, 836 F.2d 1292 (11th Cir. 1988).   Using this approach, the court multiplies the number of hours reasonably expended on the litigation by the customary fee charged in the community for similar legal services.   The result is the "lodestar."   <u>Ass'n of Disabled Ams. v. Neptune Designs, Inc.</u>, 469 F.3d 1357, 1359 (11th Cir. 2006) (per curiam); <u>Loranger v. Stierheim</u>, 10 F.3d 776, 781 (11th Cir. 2005) (per curiam); <u>Norman</u>, 836 F.2d at 1299.

The court should exclude from its calculation "excessive, redundant or otherwise unnecessary" hours.   <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 434 (1983).   "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."   <u>Norman</u>, 836 F.2d at 1299.

"[T]here is a 'strong presumption' that the lodestar is the reasonable sum the attorneys deserve."   Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008) (citing Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565-66 (1986)).   Once the lodestar has been determined, the court may adjust it to reach what the court considers to be an appropriate attorney's fee.   Neptune, 469 F.3d at 1359. "The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates."   Norman, 836 F.2d at 1303.

Plaintiff, as the fee applicant, "bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates."   Id. at 1303.   Plaintiff can meet this burden "by producing either direct evidence of rates charged under similar circumstances, or opinion evidence of reasonable rates."   Chemische, 2010 WL 98991, at *4.   "[T]he Court may use its own expertise and judgment to make an appropriate independent assessment of the value of the attorney's services."   Id. (citing Norman, 836 F.2d at 1303); see also Perez v. Sanford-Orlando Kennel Club, Inc., et al., No. 6:05-cv-269-Orl-28KRS, 2009 WL 2500290, at *2 (M.D. Fla. Aug. 14, 2009) ("It is well established that the Court may use its discretion and expertise to determine the appropriate hourly rate to be applied to an award of attorney's fees.").

"Ultimately, the computation of a fee award is necessarily an exercise in judgment because '[t]here is no precise rule or formula for making these determinations.'"   Villano v. City of Boynton Beach, 254 F.3d 1302, 1305 (11th Cir. 2001) (quoting Hensley, 461 U.S. at 436).

To establish their fees, counsel for Plaintiffs have submitted copies of their invoices (Doc. 24-2 at 6).   Originally, they redacted all of the descriptions of services performed.   The only information furnished to the Court was the date of service,

timekeeper, time recorded, and a corresponding amount (Id.).   I informed counsel that I would not recommend an award of fees for unknown services rendered (Doc. 25).   In response, counsel for Plaintiff have filed new copies of their invoices and represent that the now un-redacted time entries cover all of the attorney's fees Plaintiff seeks to recover (Doc. 29 at 2).   Now Plaintiffs seek the following:

| Attorney | Rate | Hours | Amount |
|---|---|---|---|
| W. Glenn Jensen | $340 | 3.0 | $1,020.00 |
| W. Glenn Jensen | $272 | 2.7 | $734.40 |
| Mychal J. Katz | $235 | 17.9 | $4,206.50 |
| Mychal J. Katz | $188 | 4.4 | $827.20 |
| Connie Gibson[5] | $110 | 3.0 | $330.00 |
| Connie Gibson | $88 | 0.7 | $61.60 |
| Total | | | $7,179.70 |

Plaintiff has not provided any biographical information for its attorneys, or any third-party opinions concerning the reasonableness of their fees.   Still, based upon my own knowledge of commercial loan litigation, my knowledge of hourly rates in the local legal community, and based on my review of the counsel's billing records, I find the hourly rates charged and the number of hours claimed to be reasonable.

Because the Note is a negotiable instrument, and the indebtedness evidenced by the Note will be incorporated into a final judgment, I respectfully recommend that Plaintiff be required to deliver the original Note to the Court for cancellation.

---

[5] Based on her hourly rates, Ms. Gibson appears to be a paralegal.

### III. Recommendation

For the foregoing reasons, I **RESPECTFULLY RECOMMEND** that:

(1) Plaintiff's Motion for Default Final Judgment (Doc. 24) be **GRANTED**.

(2) That judgment be entered for Plaintiff and against Defendants, jointly and severally, as follows:

(a) Chalifoux Business Park, L.L.C., Thomas E. Chalifoux, Jr., and Harry W. Chalifoux in the amount of $5,721,318.94.[6]

(b) Carolyn a. Chalifoux in the amount of $3,448,184.33.

3. The Court require as a condition of the judgment that Plaintiff cancel and deliver the original Note to the Court.

### IV. Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   See 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on March 10, 2015.

THOMAS B. SMITH
United States Magistrate Judge

---

[6] This amount is as of March 10, 2016 and is comprised of: principal $5,406,048.46; interest $307,093.58; costs $997.20; and attorney's fees $7,179.70.   Interest on the principal balance accrues at the rate of $750.84 from March 11, 2016, that day included, until judgment is entered.

Copies furnished to:

      Presiding United States District Judge
      Counsel of Record
      Unrepresented Parties